IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CA No.: 3:20-cv-00655

| | |
|---|---|
| CEDRIC POSTON and KENNETH BLANCHETT, on behalf of themselves and all others similarly situated, ) ) ) | |
| ) | **COLLECTIVE/CLASS ACTION** |
| *Plaintiffs*, ) | **COMPLAINT** |
| ) | |
| v. ) | |
| ) | |
| STERICYCLE INC.; and SHRED-IT USA LLC ) ) | |
| ) | |
| *Defendants*. ) | |

COME NOW, Plaintiffs Cedric Poston and Kenneth Blanchett ("Named Plaintiffs") on behalf of themselves and all others similarly situated, by and through undersigned counsel, and hereby set forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges as follows:

**PRELIMINARY STATEMENT**

1.      Named Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against Defendant Stericycle Inc. and Defendant Shred-It USA LLC (collectively "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for unpaid overtime compensation, unpaid wages, and related penalties and damages.

2.      Plaintiffs consist of current and former employees working as drivers or customer service representatives for Defendants.  Defendants have a policy, pattern, or practice of failing to pay employees for all scheduled and overtime hours worked (even though such hours were

properly recorded), failing to pay employees all earned, promised and accrued wages, and forbidding employees to record all hours worked.  In particular, throughout the relevant period, Defendants have maintained a corporate policy of failing to compensate employees for all hours worked, including time spent working through lunch "breaks," failing to compensate employees at the promised rate for all hours worked less than 40 per week and/or at a premium overtime rate for all hours worked in excess of forty (40) per week.

3.      Defendants' pay practices and policies are in direct violation of the FLSA and the NCWHA; and therefore Plaintiffs, on behalf of themselves, and all others similarly situated, seek promised wages and overtime premiums for all regular-rate and overtime work required, suffered, or permitted by Defendants, liquidated damages and/or other damages as permitted by applicable law; attorneys' fees, costs and expenses incurred in this action.

4.      Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendants as drivers, customer service representatives, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, within three years prior to the commencement of this action, through the present.

5.      Defendants are liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

6.      Plaintiffs who elect to participate in this FLSA collective action seek compensation for all work performed for Defendants, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

7.      Plaintiffs also bring this action, on their own behalf, and as a representative of

similarly situated current, former or future drivers, employed by Defendants in North Carolina, under the NCWHA. Plaintiffs, who are North Carolina residents and who worked for Defendants in North Carolina, assert that they and the putative class, who work or worked in North Carolina for Defendants, are entitled to compensation for all work performed for Defendants during their scheduled lunch breaks, and who were not afforded an uninterrupted break. Additionally, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate, promised regular and premium rate for all hours worked in excess of forty (40) per week, for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

8.      Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendants' employees in North Carolina:

> All individuals who were, are, or will be employed at Defendants as drivers, customer service representatives, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, within two years prior to the commencement of this action, through the present.

9.      In addition, Named and Opt-in Plaintiffs[1] bring this action to remedy Defendants' unlawful acts upon Plaintiffs' exercising their rights under the North Carolina Retaliatory Employment Discrimination Act ("REDA'), N.C. Gen. Stat. § 95-240, for discriminating against Plaintiffs following complaints regarding work place safety and health concerns and Defendants subsequently terminating Plaintiffs, in violation of REDA and North Carolina public policy.

10.     Accordingly, Plaintiffs seek all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory

---

[1] Named Plaintiffs contemporaneously submit the consent to join suits form of the following individuals (hereinafter "Opt-in Plaintiffs"): Derrick Hinton, Jason Leonce, Antonio Morris, Treshon Stevens, Philip Daniel, and Tobias Williams.

damages, punitive damages, attorney's fees and costs, consequential damages, and all other relief permitted by applicable law.

## PARTIES

11.     Defendant Stericycle Inc. ("Defendant Stericycle") is a billion-dollar compliance company that specializes in collecting and disposing regulated substances, such as medical waste and sharps, pharmaceuticals, hazardous waste, and providing services for recalled and expired goods.

12.     Defendant Shred-it USA LLC ("Defendant Shred-it") is a security service provided by Defendant Stericycle and is considered a "Stericycle solution." According to its website, Defendant Shred-it is the largest document destruction provider in the world.

13.     Plaintiff Cedric Poston ("Plaintiff Poston") is an adult citizen and resident of the state of North Carolina, residing in Angier, North Carolina. Plaintiff Poston worked for Defendants as a Customer Service Representative, whose primary duties included driving to customer locations and picking up documents and other items for disposal.

14.     Plaintiff Kenneth Blanchett ("Plaintiff Blanchett") is an adult citizen and resident of the state of North Carolina, residing in Durham, North Carolina. Like Plaintiff Poston, Plaintiff Blanchett worked as a Customer Service Representative/Driver, whose primary duties included driving to customer locations and picking up documents and other items for disposal.

15.     The FLSA collective action plaintiffs consist of individuals who have worked for Defendants, who were paid an hourly wage, and who were not properly paid for all hours worked, given Defendants' policy and practice of automatically deducting thirty (30) minutes from each shift.

16.     Plaintiffs bring this action on their own behalf and, pursuant to 29 U.S.C. § 216(b), as representatives of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

17.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

18.     According to its website, Defendants operate across North Carolina and maintain business locations in Raleigh, Greensboro, Winston-Salem, and Charlotte.

19.     The United States District Court for the Western District of North Carolina has personal jurisdiction because Defendants conduct business in all areas of the state, including but not limited to Mecklenburg County, North Carolina, which is located within this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conducted business within all districts of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

21.     Particularly within this District, Defendants advertise its paper shredding, hard drive destruction, and specialty shredding services (such as pill bottles) cover a geographic area ranging from "Charlotte to Gastonia, Hickory to Salisbury, Rock Hill (SC) and surrounding areas."

22.     The claims for violations of the NCWHA and REDA are based upon the statutory law of the State of North Carolina.

23.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state claims under REDA and the NCWHA because the state law claims arise out of the same nucleus of operative facts as the FLSA claims.

24.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

25.     The evidence establishing liability for the causes of action will be similar, and the state law claims will not predominate nor create confusion for a jury.

26.     Upon information and belief, during the period relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Plaintiff, pursuant to REDA, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiffs, and each Defendant directly received the benefit of Plaintiffs' labor.  More information about the nature and role of each Defendant within the enterprise is provided below.

## COVERAGE

27.     At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named, opt-in, and putative Plaintiffs.

28.     At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

29.     At all times material to this action, Plaintiffs were employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

30.     At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

31.     At all times material to this action, Defendants were joint employers pursuant to 29 C.F.R. § 791.2.

32.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of

goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## WAGE-RELATED FACTUAL ALLEGATIONS

33.     Defendant Stericyle, through the assistance of its subsidiaries, including Defendant Shred-it, offers regulated waste management services, sharp disposal containers to reduce the risk of needlesticks, healthcare compliance services, and other similar services.

34.     In 2015, Defendant Stericycle acquired Defendant Shred-it, which offers secure information destruction services, including document and hard drive destruction.

35.     Defendant Stericycle and Defendant Shred-it share the same United States headquarters, located in Lake Forest, Illinois.

36.     Defendants, through a joint enterprise, provide these services to a variety of commercial clients, ranging from healthcare facilities to veterinary and animal hospitals to small businesses and large corporations.

37.     Plaintiff Poston began working for Defendants on April 15, 2019, as a full-time, hourly, non-exempt driver.  Plaintiff Poston's final pay rate was $16.00 per hour.

38.     Plaintiff Blanchett began working for Defendants on January 7, 2019, as a full-time, hourly, non-exempt driver.  Plaintiff Blanchett's final pay rate was $15.50 per hour.

39.     As drivers/customer service representatives, Plaintiffs are responsible for servicing Defendants' clients' disposal and destruction needs.

40.     Plaintiffs are typically scheduled to work Monday through Friday, from 6:00 a.m. to 5:00 p.m.  However, the actual end time of Plaintiffs' shifts regularly fluctuated between 5:00 p.m. to as late as 7:00 p.m., depending on the route and loads transported that day.

41.    Typically, Plaintiffs worked approximately ten (10) to thirteen (13) hours each shift.

42.    Upon arriving at Defendants' warehouse at the start of the shift, Plaintiffs badge and clock in before beginning their pre-route routine.  First, Plaintiffs check the route sheets to see what stops they are assigned for the day.  During their shift, Plaintiffs drive to and enter client facilities in order to obtain the documents and materials to load onto Defendants' vehicles and then take to Defendants' warehouse for destruction.  In one shift, Plaintiffs may be required to service twenty (20) to thirty (30) different businesses.

43.    Prior to leaving the warehouse, Plaintiffs check their work vehicles to ensure the truck was fully loaded and in working conditions. Plaintiffs are permitted twenty minutes to perform all the pre-route duties, but must be on the road by no later than 6:30 a.m.

44.    Plaintiffs may operate different-sized trucks, as some vehicles have an onboard shredder for on-site shredding services and other trucks are simply used to pick-up waste and documents from Defendants' clients and transport the waste to Defendants' facilities for disposal or destruction.

45.    While en route, Plaintiffs' duties include driving and maintaining safety while driving, picking up important documents from clients and securing them in totes, installing consoles that have a lock mechanism, and loading and unloading trucks at Defendants' warehouse.

46.    During the course of a shift, Plaintiffs are scheduled to take a thirty (30) minute unpaid lunch break.

47.    In order to track meal periods, Defendants' vehicles are equipped with a handheld device that allows Plaintiffs to press a button to track and document the start and stop times of Plaintiffs' meal periods.  However, Plaintiffs were instructed a full thirty (30) minutes would be

deducted from each shift, regardless of whether Plaintiffs take the lunch break, record the start and stop times, if recorded at all.

48.     Indeed, despite Plaintiffs being able to clock in and out for their lunch breaks, when taken, Defendants automatically deduct a full thirty (30) minutes regardless of the timekeeping system's recorded lunch break times.

49.     Though Plaintiffs are scheduled to receive a thirty-minute lunch break, Plaintiffs typically are unable to take any breaks during their routes.  Because Plaintiffs service up to thirty client locations a day, Plaintiffs are required to continue working through their lunch breaks in order to ensure they complete all stops on their scheduled routes.

50.     Additionally, because Plaintiffs' work requires entering the clients' facilities, typically businesses, Plaintiffs must make the stops during regular business operating hours.  Most days, Plaintiffs cannot afford to take a lunch break without risking arriving at clients' facilities after the business has closed for the day.

51.     If Plaintiffs are unable to make a scheduled stop during their shift, they are disciplined and threatened with termination.

52.     Moreover, Defendants' managers informed Plaintiffs that such 30 minute lunch breaks would be automatically deducted. Knowing Plaintiffs simply cannot take their lunch breaks due to the number of required daily stops, managers instructed Plaintiffs to "use best judgment" when determining whether taking the scheduled break would be appropriate.

53.     Typically, Plaintiffs are only able to take a "meal break" when they operate routes in pairs.  On these occasions, one driver/customer service representative will continue to drive to the next client location while the other takes the "meal break."

54.    Approximately only twice a week, Plaintiffs are able to take a full, uninterrupted meal break.

55.    In other words, Defendants maintain a practice of assigning Plaintiffs overloaded route schedules that require Plaintiffs to work through the unpaid "meal periods," in order to ensure all Clients receive Defendants' services, and Defendants do not compensate Plaintiffs for work performed during the "meal periods."

56.    For example, during one week where Plaintiff Poston worked five shifts and he was unable to take a break on three days and continued performing duties through the "meal period," Defendants would have unlawfully deducted one hour and thirty minutes from Plaintiff Poston's total worked hours. For work performed during the "meal periods," Plaintiff Poston is owed at least $36.00 during this one week alone, because Defendants maintained a policy that compensated Plaintiffs at time and one-half for all hours over 40.

57.    Similarly, during one week where Plaintiff Blanchett worked five shifts and he was unable to take a break on three days and continued performing duties through the "meal period," Defendants would have unlawfully deducted one hour and thirty minutes from Plaintiff Blanchett's total worked hours. For work performed during the "meal periods," Plaintiff Blanchett is owed at least $34.88 during this week, because Defendants maintained a policy that compensated Plaintiffs at time and one-half for all hours over 40.

58.    Once Plaintiffs have completed all stops on their route, they return to Defendants' facilities where they unload the collected waste, clean the truck, and turn in paperwork, including a route log that documents the time of each stop along the route. Plaintiffs are required to clock out using Defendants' timekeeping system at Defendants' warehouse once all post-route work is complete.

## RETALIATION AND WRONGFUL TERMINATION FACTUAL ALLEGATIONS

59.     During the initial weeks of the 2020 Covid-19 Pandemic (the "Pandemic"), Defendants failed to implement any safety measures or provide personal protective equipment to Plaintiffs to help prevent the spread of COVID-19.

60.     At the beginning of the Pandemic, a driver for Defendants returned from his route and informed the other drivers and Defendants' facility management team to stay away from him because he had been exposed to the coronavirus while on route.

61.     Several drivers, including Named Plaintiffs and the aforementioned Opt-in Plaintiffs, voiced their concerns to the transportation supervisors, requesting information on the preventative and protective measures that would be taken to protect drivers' health.   The supervisors refused to provide any specific details and brushed off Plaintiffs' questions.

62.     Unsatisfied with the lack of response from their supervisors, Named and Opt-in Plaintiffs contacted Defendants' human resources and corporate offices, to complain of the treatment by the facility manager, the lack of information and communication, and the complete lack of safety protocols in place and any protective gear.

63.     For example, Named Plaintiff Blanchett spoke with Denise Harris from Defendants' Human Resources department and other Plaintiffs filed complaints with Defendants' corporate office.

64.     On or about March 19, 2020, another driver for Defendants returned from his route to Defendants' facility and notified Defendants and Plaintiffs that he had been exposed to COVID-19 while on route.  The supervisors at the warehouse facility provided no instruction or guidance on how to isolate or quarantine the exposed driver and his vehicle from the other workers. That

same day, this particular driver quit, as he felt management was not reacting to nor handling the pandemic appropriately.

65.     Learning that another one of their colleagues had been exposed during the course of his shift, Named and Opt-in Plaintiffs, again expressed their immediate concerns to management regarding the active threat to their health and the complete lack of safety protocols regarding the COVID-19 Pandemic at an impromptu meeting.

66.     During the meeting with Named and Opt-in Plaintiffs, the following individuals from Defendants' management team were present: (1) Facility Manager, Milton Emanuel; (2) the Transportation Supervisors, Jeff Borkowski and Paul LePre; (3) the District Manager; and (4) Human Resources Manager, Denise Harris, who attended the meeting telephonically.

67.     Rather than address the driver's exposure to the virus, Defendants' management denied any knowledge one of the drivers had been exposed.  In front of management, Plaintiffs called the driver to verify that he had, in fact, tried to address the matter with management.  The driver confirmed and reiterated that since management had ignored his concerns, the driver decided to leave the company.

68.     As a result, Named and Opt-in Plaintiffs raised concerns regarding safety and lack of personal protective equipment such as masks, gloves, or hand sanitizer, and addressed management's lack of plan as to how drivers should protect themselves while working. Despite Plaintiffs' efforts to protect themselves during the course of their work for Defendants, Defendants refused to address Plaintiffs' concerns, provide any details on safety protocol, or provide Plaintiffs with any personal protective equipment.

69.     Following the meeting, the facility manager instructed Named and Opt-in Plaintiffs, who attended the "impromptu" meeting, that if they feared for their safety or felt uncomfortable,

the drivers should leave for the day with pay for ten (10) hours. Prior to leaving their shifts early, Named and Opt-in Plaintiffs contacted Defendants' HR manager, Ms. Harris, to confirm they had permission to leave for the day. HR reiterated the instructions provided by the facilities manager and then instructed Plaintiffs that if they wished to quarantine in the future, they would need to use Paid Time Off.

70.     While Named and Opt-in Plaintiffs wanted to resolve the issues regarding workplace safety and/or work in another department until a safety plan was put into place for drivers on route, rather than simply going home for the day, Defendants told Plaintiffs that if they were not comfortable going out on their routes without protection then they should leave for the day.

71.     Following the call with HR, members of Defendants' management team ushered Named and Opt-in Plaintiffs to the parking lot and told Plaintiffs to "go ahead and go home."

72.     Having been instructed by management to leave for the day, Named and Opt-in Plaintiffs went home.

73.     The next day, on Friday, March 20, 2020, when Named Plaintiff Blanchett returned to work at 6:00 a.m., the entrance to the building was propped open—Named Plaintiff Blanchett did not need to use his badge as usual to enter.

74.     Named Plaintiff Blanchett was not allowed to clock-in.

75.     Instead, Named and Opt-in Plaintiffs who had participated in the meeting the day before, to address workplace safety concerns, and had left early at the instruction of management and HR, were taken into management's office, terminated for "job abandonment," and escorted out of the building.

76.     Prior to ordering Named and Opt-in Plaintiffs to go home on March 19, 2020, Defendants had terminated some of the newer drivers that same day, in anticipation of reduced operations due to the pandemic.

77.     Following the impromptu meeting and after ordering Named and Opt-in Plaintiffs to go home with pay for the day, Defendants rehired the same newer drivers. In fact, when Named and Opt-in Plaintiffs returned to work on March 20, 2020, the same newer drivers had already begun their shifts for the day.

78.     In other words, between the time Named and Opt-in Plaintiffs complained about workplace safety and asked for reasonable accommodations (i.e. gloves, hand sanitizer, masks) and their returning to work the next morning at 6:00 a.m., Defendants had already contacted former employees to replace only the drivers who complained about workplace safety violations.

79.     On or about July 15, 2020, Named and Opt-in Plaintiffs filed individual complaints with the North Carolina Department of Labor ("NCDOL"), charging Defendants with unlawful retaliation under REDA. Said complaints were filed within 180 days of the last retaliatory act by Defendants.

80.     On November 2, 2020, the NCDOL issued Named and Opt-in Plaintiffs right to sue letters, attached hereto as Exhibit A.

81.     At this time, Named and Opt-in Plaintiffs have decided to institute a private lawsuit, and are filing the same within ninety (90) days of receipt of the NCDOL's right to sue letter.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

82.     Named Plaintiffs brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

83.     Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed by Defendants as a Driver, at any time within the three (3) year period prior to the date of the commencement of this action, through the present, and who did not receive compensation for all hours worked, including one- and one-half times their regular rate for all hours worked over forty (40) in a week.

84.     The members of the proposed collective action, like Named Plaintiffs, are employed as Drivers or Customer Service Represetnatives, have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed at the appropriate rate.

85.     There are numerous (in excess of 1,000) similarly situated current and former Drivers that fall within the scope of the aforementioned FLSA class.

86.     The members of the proposed collective action are known to Defendant, are readily identifiable, and may be located through Defendants' records.

87.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

88.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

89.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the instant Complaint as Exhibit B, are the Consents to File Suit as Plaintiff executed by Named Plaintiffs. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

90.     Named Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS
## PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

91.     Plaintiff bring the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

92.     Numerosity:  The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises more than 1,000 individuals.

93.     Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendants' failure to lawfully compensate them.  The common questions of law and fact include, but are not limited to, the following:

        a.   Whether Plaintiffs were subject to an automatic deduction of thirty minutes from their hours worked;

        b.   Whether work performed by Plaintiffs during the auto-deducted thirty minutes is compensable under the NCWHA;

        c.   Whether Defendants failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked, including the promised rate for hours worked in excess of forty (40) each week;

        d.   Whether Defendants paid Plaintiffs for all of their earned, promised, straight,

and/or overtime wages as required by the NCWHA on their regular pay date.

94.     Typicality: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions.  All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay Plaintiffs and putative class members for all hours worked at the promised hourly rate, as well as suffering the same unauthorized wage deductions.  Defendants' compensation policies and practices affected all putative class members similarly, and Defendants benefited from the same type of unfair and/or unlawful acts as to each putative class member.  Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

95.     Adequacy of Representation: Plaintiffs are able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class.  Plaintiffs have retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

96.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the

wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action.  Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties.  The issue in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

97.     <u>Public Policy Considerations</u>: Defendants violated the NCWHA.  Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

98.     Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**<u>COUNT ONE</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**(Failure to Pay Proper Overtime Wages)**
**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees**

99.     Named Plaintiffs incorporate by reference all preceding paragraphs as if the same were set forth again fully at this point.

100.    At all relevant times, Defendants have been, and continues to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

101.    At all relevant times, Defendants have employed, and continue to employ, "employee[s]," including Named Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

102.    The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  The FLSA defines "employ" broadly, to cover anyone who is "suffer[ed] or permit[ed] to work."  29 U.S.C. § 203(g).

103.    Pursuant to the FLSA, 29 U.S.C. § 207, employers must pay non-exempt employees at a rate of one and one-half (1.5) times their regular rate of pay, for all hours worked over forty (40) in a single workweek.

104.    At all relevant times, Named and Putative Plaintiffs were and are non-exempt, covered employees pursuant to the FLSA.

105.    At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

106.    The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendants, to compensate all non-exempt employees at least minimum wage for all hours worked and a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

107. At all relevant times, Defendants, pursuant to their policies and practices, willfully failed and refused to pay for all hours worked to Plaintiffs, including for required work performed by Plaintiffs during their "meal periods."

108. Named and Putative Plaintiffs routinely work through their lunch breaks, as known to and required by Defendants, and rarely receive a bona fide lunch break during a shift. Named and Putative Plaintiffs do not receive any compensation for the work performed during lunch breaks.

109. Named and Putative Plaintiffs are entitled to back wages at a rate of at least one and one-half (1.5) times their regular rate of pay.

110. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), permitting the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

111. At all relevant times, Defendants, pursuant to their policies and practices, willfully failed and refused to pay for all hours worked to Plaintiffs at the proper hourly rate.

112. Despite Plaintiffs accurately documenting all hours worked, including clocking in and out for "meal periods" when possible, Defendants maintained a policy of automatically deducting a thirty-minute meal period from each shift worked by Plaintiffs. In other words, though Defendants were fully aware of the actual hours worked by Plaintiffs during each shift, Defendants did not compensate Plaintiffs for all time worked.

113. Defendants' failure to pay Plaintiffs for all hours worked at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, despite the fact that, upon information and belief, Defendants knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid

wages under 29 U.S.C. § 216(b), since Defendants cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendants' acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

114.    As a result of Defendants' unlawful acts, Named and putative Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

115.    Named and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees**

116.    Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

117.    The class period for this cause of action is at least two years from the date of the filing of the instant Complaint.

118.    At all relevant times, Defendants have employed, and/or continues to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.

119.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

120.    Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-

(2).

121.    Upon Plaintiffs beginning their employment, Defendants inform Plaintiffs of their hourly rate and of Defendants' policy and practice to compensate Plaintiffs for all hours worked in excess of forty (40) per week at a rate of one and one-half times the promised hourly rate.

122.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendants were required to pay Named Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

123.    Defendants intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Plaintiffs and putative class members in violation of the NCWHA.

124.    Defendants were aware that Named Plaintiffs and putative class members were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

125.    Defendants' daily schedules require Named Plaintiffs and putative class members to work through lunch breaks in order to timely move from one client stop to the next before the client's businesses closed for the end of the day and would not be available to receive Plaintiffs' services.

126.    Defendants maintain a policy of automatically deducting thirty-minutes from Plaintiffs' hours worked to account for the lunch break despite having knowledge of Named Plaintiff working during lunch breaks.

127.    Defendants employ Named Plaintiffs and putative class members within the State of North Carolina.

128.    At all relevant times, Defendants, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for work performed by Plaintiff during his lunch breaks, and at the appropriate rate that Plaintiffs are lawfully entitled to for hours worked up to forty (40) in a single workweek as well as hour worked in excess of forty (40) in a single workweek.

129.    Consistent with the above, Defendants' failure to pay Named Plaintiffs and putative class members all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

130.    As a result of Defendants' unlawful policies and practices, Named Plaintiffs and putative class members have been deprived of compensation due and owing.

131.    Defendants' failure to pay Named Plaintiffs and putative class members all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendants knew of its obligations under the law, entitles Named Plaintiffs and putative class members to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

132.    As a result of Defendants' unlawful acts, Named Plaintiffs and putative class members have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

**COUNT THREE**
**Violation of the North Carolina Retaliatory Employment Discrimination Act 29**
**N.C. Gen. Stat. § 95-240**
**Brought by Named Plaintiffs on Behalf of Themselves and Opt-in Plaintiffs**

133.    Plaintiffs incorporate by reference all preceding paragraphs as if the same were

repeated here verbatim.

134.    Defendants are a person within the meaning of N.C. Gen. Stat. § 95-240 (1).

135.    Defendants are an "employer" within the meaning of N.C. Gen. Stat. § 95-240.

136.    Filing a claim or complaint, initiating any inquiry, investigation, inspection, proceeding or other action, or testifying or providing information to any person with respect to the General Statutes is a protected activity under N.C. Gen. Stat. § 95-243.

137.    North Carolina law prohibits discrimination or retaliation against an employee for exercising rights protected under the North Carolina General Statutes. N.C. Gen. Stat. § 95-241(a). This includes making any discrimination or retaliation against an employee for reporting a violation of the North Carolina Occupational Safety and Hazard Act. N.C. Gen. Stat. § 95-241(a)(1) unlawful.

138.    By communicating with Defendants their concerns related to Defendants' unsafe and violative work environment, including addressing Defendants' lack of personal protective equipment to protect against exposure to COVID-19, Plaintiffs engaged in protected activity. N.C. Gen Stat. § 95-241(a);

139.    The North Carolina Occupational Safety Hazard Act ("NC OSHA") adopts all occupational safety and health standards promulgated under the federal act. N.C. Gen. Stat. § 95-131.

140.    Employers are required to provide each worker "employment and a place of employment, which are free from recognized hazards that are causing or are likely to cause death or serious physical harm. 29 C.F.R. 654(a)(1); *see also* OSHA, *COVID-19 Standards*, https://www.osha.gov/SLTC/covid-19/standards.html *(*citing 29 C.F.R. 1910 Subpart 1, generally requiring gloves, eye and face protection, and respiratory protection when job hazards warrant).

141.    Immediately upon Named Plaintiffs and Opt-in Plaintiffs' requests for personal protective equipment and inquiring about information on Defendants' safety procedures for COVID-19, Defendants ordered Named and opt-in Plaintiffs to go home and subsequently terminated the same individuals the very next day.

142.    Defendants' hostile treatment towards Plaintiffs' following their inquiry into Defendants' compliance with workplace safety requirements as well as the termination of Plaintiffs' employment was in violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240 *et seq*.

143.    Accordingly, Plaintiff is entitled to lost wages, lost benefits, and other economic losses as well as treble damages pursuant to N.C. Gen. Stat. § 95-243.

## COUNT FOUR
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**
**Brought by Named Plaintiffs on Behalf of Themselves and Opt-in Plaintiffs**

144.    Named Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

145.    It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. § 95-240, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that employees be free from harassment, discrimination, and retaliatory treatment in their employment.

146.    Named Plaintiffs and Opt-in Plaintiffs participated in legally protected activity by pursuing lawful employment with the expectation of having their constitutional and statutory rights respected and preserved by Defendants.

147.    The termination of Plaintiffs' employment, resulting from their inquiring about workplace safety violations, was wrongful as against the public policy of the State of North

Carolina.

148. Such termination proximately caused Named and Opt-in Plaintiffs to suffer emotional distress and other losses, as described above. Accordingly, Plaintiffs are entitled to compensatory damages under North Carolina law and interest pursuant to N.C. Gen. Stat. § 24-5(b).

149. Defendants' acts constituted willful, wanton, and malicious conduct, entitling Plaintiff to putative damages pursuant to Chapter 1D of the North Carolina General Statutes.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiffs as representatives of all those similarly situated under the FLSA collective action;

2. Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiffs as representatives on behalf of all those similarly situated under the NCWHA class;

3. Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4. Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5.      Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.      Award Named and Opt-in Plaintiffs all wages, salary, benefits, or other compensation denied to or lost by Plaintiff, and monetary losses sustained, as a result of Defendants' unlawful actions under REDA;

7.      Award Plaintiffs interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii) and N.C. Gen. Stat. § 95-243(c);

8.      Award Plaintiffs all consequential damages due as a result of Defendants' unlawful acts;

9.      Award Plaintiffs punitive damages for Defendants' willful, wanton, and malicious conduct;

10.     Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted, November 24, 2020.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
Robert W.T. Tucci (NCSB No. 55014)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com

csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiff*