IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-655-RJC-DCK

| | |
|---|---|
| PHILLIP DANIEL, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STERICYCLE INC., and SHRED-IT USA LLC, )<br>)<br>Defendants. )<br>) | <br><br><br><br><br>MEMORANDUM AND<br>RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Defendants Stericycle Inc And Shred-It USA LLC's Motion To Stay Opt-In Plaintiffs' Claims Pending Arbitration And Partially Dismiss Named Plaintiff's Amended Complaint For Failure To State A Claim" (Document No. 33). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied</u> in part.

**I. BACKGROUND**

This lawsuit was initiated on November 24, 2020, with the filing of a "Collective/Class Action Complaint" by Cedric Poston ("Poston") and Kenneth Blanchett ("Blanchett") on behalf of themselves and all others similarly situated. (Document No. 1). On January 27, 2021, Stericycle, Inc. ("Stericycle") and Shred-It USA LLC ("Shred-It") (together, "Defendants") filed a "…Motion To Dismiss And Compel Arbitration, And/Or In The Alternative, Motion To Dismiss For Failure To State A Claim" (Document No. 19). The "…Motion To Dismiss…" argued, *inter alia*, that Poston and Blanchett "and five of six Opt-In Plaintiffs . . . signed valid and enforceable

arbitration agreements as a condition of their hiring and employment with Stericycle." (Document No. 19, p. 1).

In response to the "…Motion To Dismiss…," a "First Amended Collective And Class Action Complaint" (Document No. 24) (the "Amended Complaint") was filed on February 17, 2021. Phillip Daniel ("Plaintiff" or "Daniel" or "Named Plaintiff") filed the Amended Complaint, on behalf of himself and all others similarly situated. (Document No. 24). The Amended Complaint asserts that:

> Plaintiffs consist of current and former employees working as drivers or customer service representatives for Defendants. Defendants have a policy, pattern, or practice of failing to pay employees for all regular and overtime hours worked, failing to pay employees all earned, promised and accrued wages, and forbidding employees to record all hours worked. In particular, throughout the relevant period, Defendants have maintained a corporate policy of failing to compensate employees for all hours worked, including time spent working through lunch "breaks," failing to compensate employees at the promised rate for all hours worked less than 40 per week and/or at a premium overtime rate for all hours worked in excess of forty (40) per week.

(Document No. 24, pp. 1-2).

The Amended Complaint notes that Opt-In Plaintiffs who have submitted "Consents to Join Suit forms" include: Poston, Blanchett, Derrick Hinton ("Hinton"), Jason Leonce ("Leonce"), Antonio Morris ("Morris"), Treshon Stevens ("Stevens"), and Tobias Williams ("Williams") (together, "Opt-In Plaintiffs") (all together with Plaintiff Daniel, "Plaintiffs"). (Document No. 24, p. 3, n.1); see also (Document Nos. 25 and 26).

The Amended Complaint asserts claims for: (1) Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (2) Violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. § 95-25.6; (3) Violation of the North Carolina Retaliatory Employment

2

Discrimination Act ("REDA"), N.C.Gen.Stat. § 95-240;  and (4) Wrongful Discharge in Violation of North Carolina Public Policy.  (Document No. 24, pp. 20-28).

Based on the timely-filed Amended Complaint, the Court denied Defendants' original "…Motion To Dismiss…" (Document No. 19) as moot on February 23, 2021.  (Document No. 30).  Defendants then filed the now pending "…Motion To Stay Opt-In Plaintiffs' Claims Pending Arbitration And Partially Dismiss Named Plaintiff's Amended Complaint For Failure To State A Claim" (Document No. 33) on March 3, 2021.

Defendants' motion to stay and partially dismiss has been referred to the undersigned and is ripe for review.[1]

## II.  STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the rights and responsibilities of parties to an arbitration agreement.  See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004).  Under the FAA, "[w]hen a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the [Act] commands the federal courts to stay any ongoing judicial proceedings and to compel arbitration." Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 552 (4th Cir. 2001) (quoting Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999)).  "The primary substantive provision of the FAA, § 2," expresses a strong policy in favor of arbitration:  a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Patten Grading & Paving, 380 F.3d at 204 (quoting

---

[1] Also pending before the Court, but not referred to the undersigned, are "Plaintiff's Amended Motion To Conditionally Certify This Matter As A Collective Action And For A Court-Authorized Notice To Be Issue Under Section 216(B) Of The Fair Labor Standards Act" (Document No. 34) and "Defendants Stericycle And Shred-It USA LLC's Motion For Partial Summary Judgment" (Document No. 40).

9 U.S.C. § 2). Accordingly, a party may obtain an order compelling arbitration and a stay of federal court proceedings if it can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of [the opposing party] to arbitrate the dispute.

Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002)); see also 9 U.S.C. §§ 3–4.

To determine whether the parties have agreed to arbitrate, this Court must apply state law principles governing contract formation. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

In support of the pending motion to stay and dismiss, Defendants suggest that Plaintiffs filed the Amended Complaint to "rearrange[] the deck chairs by making the only opt-in plaintiff not bound by an arbitration agreement (Phillip Daniel) the Named Plaintiff and redesignating Poston and Blanchett as opt-in plaintiffs." (Document No. 33-1, p. 2). Defendants contend that "the amendment does not alter the inescapable conclusion that those who signed arbitration agreements must proceed only in that forum." Id. Defendants further contend that "the Amended Complaint does not cure original pleading defects with respect to Counts II, III, and IV." (Document No. 33-1, p. 3).

**A. Motion To Stay**

According to Defendants, all seven (7) Opt-In Plaintiffs entered into identical binding agreements to arbitrate the claims covered by this lawsuit. (Document No. 33-1, p. 4) (citing

5

Document No. 33-2). As such, Defendants now seek a stay of the Opt-In Plaintiffs' claims pursuant to the Federal Arbitration Act ("FAA"). The FAA provides in pertinent part that the Court, "in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Defendants contend that "[t]his stay of litigation provision is mandatory." (Document No. 33-1, p. 10) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002)).

Defendants argue that even if this Court lacks authority to compel arbitration under Section 4 of the FAA – due to a forum selection clause that provides that arbitration be held in locations outside this District – caselaw supports the Court's authority to grant a stay under Section 3. (Document No. 33-1, pp. 10-11) (citing Forshaw Indus. v. Insurco, Ltd., 3:13-CV-O88-RJC-DSC, 2 F.Supp.3d 772, 788-89 (W.D.N.C. 2014) ("[A] Section 3 order does not concern itself with the place of arbitration. Rather the court merely enters an order staying proceedings until such arbitration proceedings are completed.")); see also Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp., 293 U.S. 449, 453 (1935); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F.Supp.2d 356, 363 (S.D.N.Y. 2003).

"In determining whether a stay is required under Section 3, courts must 'engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" (Document No. 33-1, p. 12) (quoting Murray v. UFCW Int'l, Local 400, 289 F.3d 297, 302 (4th Cir. 2002) (quoting Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir.1999)). Defendants offer the following authority on the issue of arbitrability:

> Because arbitration is a highly-favored way to resolve disputes, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Indeed, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 563 U.S. at 344 (citation omitted). The United States Supreme Court has repeatedly held that courts should liberally read and rigorously enforce arbitration agreements. *Epic Sys. v. Lewis*, 138 S.Ct. 1612, 1621 (2018). A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

(Document No. 33-1, p. 12).

Defendants argue that there is a valid arbitration agreement between them and each Opt-In Plaintiff and that the Opt-In Plaintiffs' claims fall within the scope of the agreement. (Document No. 33-1, pp. 13-16). According to Defendants, "each Opt-In Plaintiff (Poston, Blanchett, Hinton, Leonce, Morris, Stevens, and Williams) signed arbitration agreements at the beginning of his employment." (Document No. 33-1, p. 13) (citing Document No. 33-2). "Plaintiffs specifically agreed that 'any and all disputes, claims or controversies arising out of the employment relationship between the parties or termination of that relationship, shall be resolved by final and binding arbitration.'" (Document No. 33-1, p. 15) (quoting Document No. 33-2, p. 5). The "Agreement To Arbitrate Claims" (Document No. 33-2) ("Arbitration Agreement") states that the covered claims "include, but are not limited to, claims for wrongful termination . . . discrimination or harassment; violation of any federal, state or other governmental constitution, statute, ordinance or regulation . . . ." Id.

Defendants further argue that they have not defaulted on their right to arbitrate, and conclude they have "satisfied the requisite threshold under the limited review applicable to Section 3 motions." (Document No. 33-1, pp. 15-16).

In opposition, Named Plaintiff Daniel first argues that the Court should decline to consider the "applicability of any alleged arbitration agreement and its effect on a collective class action" until "*after* conditional certification." (Document No. 38, p. 10) (citing Gordon v. TBC Retail Grp., Inc., 134 F.Supp.3d 1027, 1039 (D.S.C. 2015) and Villatoro v. Kim Son Restaurant, 286 F.Supp.2d 807, 808 (S.D.Tx. 2003)). Plaintiff then states that if the Court decides it is appropriate to assess "the alleged arbitration agreement at this early stage of litigation," then the Court should find it is "not enforceable." (Document No. 38, p. 11).

Named Plaintiff contends the Arbitration Agreement is invalid and should not be enforced because it is procedurally and substantively unconscionable. (Document No. 38, pp. 11-14). Named Plaintiff offers the following legal authority:

> Under North Carolina law, a contract is unconscionable "only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Mansfield v. Vanderbilt Mortg. Finance, Inc.*, 29 F. Supp. 3d 645, 653 (E.D.N.C. 2014) (quoting *Brenner v. Little Red. Sch. House Ltd.*, 302 N.C. 207, 213 (1981)). A party must prove both procedural and substantive unconscionability to prevail on this defense. *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 102-03, 655 S.E.2d 362, 370 (2008). . . .
>
> "Procedural unconscionability involves unfair surprise, lack of meaningful choice, or an inequity in bargaining power." *Id.*, 2013 WL 12143171, at *3. Courts in this Circuit consider whether the provisions are boilerplate, the amount of time a person has to review, whether terms were explained, whether the arbitration provision was emphasized, and the sophistication and relative bargaining power of the parties. *Mansfield*, 29 F. Supp. 3d at 654; *see also Tillman*, 362 N.C. at 103 . . .
>
> "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." *See Tillman*, 362 N.C. at 103, 655 S.E.2d at 370.

(Document No. 38, pp. 11-13).

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it "is boilerplate and contains non-negotiable terms." (Document No. 38, p. 12) (citing Document No. 33-2, pp. 5-7). Plaintiff notes, *inter alia*, that the Agreement "provides no headings but rather various paragraphs, spaced close together [and] provides no copy of the rules referenced therein, but requires the prospective employee to follow a link to a general website…." (Document No. 38, p. 12) (citing Document No. 38-1). In addition, Plaintiff states that the Opt-In Plaintiffs are "less sophisticated and have less bargaining power as compared to Defendants" and that "Defendants drafted the arbitration agreement and unilaterally controlled the terms therein." Id.

Plaintiff further argues that the Agreement is substantively unconscionable because it allows "the arbitrator *discretion* to issue awards that would otherwise be mandatory under the applicable law." (Document No. 38, pp. 13-14). Moreover, the Arbitration Agreement "requires the employee to cover $150 worth of initial filing fees" and allows Defendants "to 'cure' any identified deficiency of the agreement." (Document No. 38, p. 14). Plaintiff concludes that the Arbitration Agreement is consequently "unconscionable, as the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense.'" Id. (quoting Mansfield, 29 F.Supp.3d at 653).

In reply, Defendants argue that the time to rule on the enforceability of the Opt-In Plaintiffs' Arbitration Agreement is now. (Document No. 39, pp. 1-2). Defendants contend that "Opt-In Plaintiffs point to no case law saying the Court should decline to rule on a motion to enforce arbitration agreement just because Plaintiffs seek to proceed on a collective basis, particularly when they seek to do so in contravention of those agreements." (Document No. 39, p. 2). Defendants assert that according to FAA Section 3, a "stay-of-litigation is mandatory" and that "the Supreme Court has held that the FAA '*requires* piecemeal resolution when necessary to

9

give effect to an arbitration agreement.'" (Document No. 39, p. 3) (citing Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 20 (1983)).

Next, Defendants argue that the cases relied on by Plaintiff are distinguishable, and they were decided before any Circuit court weighed in on this issue. (Document No. 39, pp. 3-5). Defendants encourage the Court to follow more recent decisions by the Fifth and Seventh Circuits that "concluded the better course of action is to rule on the enforceability of the agreement upfront." (Document No. 39, p. 5) (citing In re JPMorgan Chase & Co., 916 F.3d 494, 501, 503 (5th Cir. 2019) and Bigger v. Facebook, Inc., 947 F.3d 1043, 1047 (7th Cir. 2020)).

Regarding the Arbitration Agreement, Defendants assert Plaintiff's "first two objections are easily addressed by the agreement's opt-out provisions, which provide exactly the touchstone 'meaningful choice' that precludes a finding of procedural unconscionability." (Document No. 39, p. 9) (citing Heidbreter v. Epic Games, Inc., 483 F.Supp.3d 591, 598 (E.D.N.C. 2020); Hawthorne v. BJ's Wholesale Club, 2016 WL 4500867, at *6 (E.D.Va. Aug. 26, 2016); Varon v. Uber Techs., Inc., 2016 WL 1752835, at *5 (D. Md. May 3, 2016); Snow v. CitiBank, N.A., 2015 WL 799543, at *8 (E.D.N.C. Feb. 25, 2015)). Defendants note that the Arbitration Agreement clearly advises employees of their right to "opt out," including in the first paragraph and in bold, capital letters on the last page – "**EMPLOYEE OPT-OUT RIGHTS**." (Document No. 39, p. 10) (citing Document No. 33-2, pp. 5, 7). Moreover, the Agreement suggests that an "Employee may wish to consult an attorney about the pros and cons of this Agreement before making a decision." (Document No. 33-2, p. 7).

In further rebuttal of Plaintiff's arguments, Defendants note that the Agreement requires 30 days "written notice of any modification and employees may reject the change by sending written notice to the company – in such case, the prior version of the arbitration agreement remains

10

in effect." (Document No. 39, p. 11). Defendants also observe that the Agreement directs employees to the websites of both potential arbitration services, where an employee may readily access the rules. Id. See also (Document No. 33-2, p. 5)(citing www.jamsadr.com and www.adr.org). Moreover, by signing the Agreement, the employees acknowledged that they had an opportunity to review the JAMS or AAA rules. Id.

As to substantive unconscionability, Defendants argue that the Agreement does not provide the arbitrator "any greater discretion in making awards than a court has." (Document No. 39, p. 13). In fact, the Agreement "expressly states '[t]he arbitrator is authorized to award any remedy or relief available under applicable law that would have been available to the parties had the matter been heard in a court.'" Id. (citing Document No. 33-2, p. 6).

Next, Defendants argue that Plaintiff cites no authority supporting the position that a $150 filing fee is harsh or prohibitively high, especially since it "is less than 40% of the fee required to file in this Court." Id.

The undersigned finds Defendants' arguments most persuasive on this issue. The undersigned agrees that there is a valid agreement to arbitrate between Defendants and Opt-In Plaintiffs. Moreover, the Arbitration Agreement is applicable to the dispute between Defendants and Opt-In Plaintiffs and is *not* procedurally *or* substantively unconscionable. See (Document No. 33-2). To the contrary, the Agreement is clearly written, explains what it covers and where to find the applicable rules, and repeatedly advises an employee of the right to opt-out. Id. The Agreement does not appear to be shocking or oppressive in any way. Although neither side addresses this detail, presumably Named Plaintiff Daniel reviewed the Agreement and exercised his option to opt-out.

11

Case 3:20-cv-00655-RJC-DCK Document 54 Filed 11/24/21 Page 11 of 19

In short, the undersigned is persuaded that this action should be <u>stayed</u> as to the Opt-In Plaintiffs (Poston, Blanchett, Hinton, Leonce, Morris, Stevens, and Williams) pending resolution of their claims pursuant to the "Agreement To Arbitrate Claims" (Document No. 33-2).

## B. Motion To Dismiss

By the instant motion, Defendants also seek dismissal of Named Plaintiff's state law claims, Counts II, III, and IV, pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 33-1, pp. 16-24).

### 1. North Carolina Wage and Hour Act

First, Defendants argue that "the NCWHA expressly exempts overtime claims that are otherwise recoverable under the FLSA." (Document No. 33-1, p. 17) (citing N.C.Gen.Stat. § 95-25.14(a)(1) (exempting "enterprise[s] engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act" from alleged violations of "[t]he provisions of . . . G.S. 95-25.4 (Overtime)"). See also Sharkey v. Fortress Sys. Int'l, Inc., 3:18-CV- 019-FDW-DCK, 2019 WL 3806050, at *6-7 (W.D.N.C. Aug. 13, 2019) ("Nothing in Plaintiffs' Complaint suggests Defendants failed to pay Plaintiffs' wages other than the overtime they allege is owed to them," and "no record evidence exists to support Plaintiffs' claims under the NCWHA other than their evidence related to failure to pay overtime").

Defendants contend that "Plaintiffs have tried to dress up this claim to make it seem like they are also recovering straight time (wages for hours worked up to and including forty per week), [but] at no point in the Amended Complaint is any instance alleged where Named Plaintiff worked fewer than forty hours per week." (Document No. 33-1, p. 19).

In response, Named Plaintiff argues that even though Defendants are subject to the FLSA, they "are *still* required to comply with other applicable provisions of the NCWHA, including the

12

requirements for timely payment of ***all*** accrued wages." (Document No. 38, p. 15) (citing N.C.Gen.Stat § 95-25.6 (Wage Payment Provision) and Luna-Reyes v RFI Const., LLC 109 F.Supp.3d 744, 753 (M.D.N.C. 2015)). Plaintiff Daniel contends that he "does *not* raise claims pursuant to N.C. Gen. Stat. § 95-25.3 (Minimum Wage) or § 95-25.4 (Overtime)," "[r]ather, Named Plaintiff pursues an unpaid wages claim on behalf of himself and others similarly situated, for *any unpaid, earned and accrued* (straight, promised, or overtime) wages due to *all* unpaid hours worked pursuant to N.C. Gen. Stat. § § 95.25.6 and 95-25.22, which provide a vehicle for such recovery of unpaid wages." Id.

Plaintiff effectively argues that courts have refused to exempt claims for earned wages under N.C.Gen.Stat. § 95-25.6 pursuant to N.C.Gen.Stat. § 95-25.14. (Document No. 38, pp. 16-17) (citations omitted). Moreover, Plaintiff contends the cases relied on by Defendants, like Sharkey, are distinguishable because the plaintiffs in those cases attempted to bring *only* overtime claims. (Document No. 38, pp. 18-20). "In fact, unlike the plaintiff in *Sharkey*, Named Plaintiff repeatedly reiterated the purpose of this action, was, in part, to recover unpaid *all earned and accrued wages*, including wages accrued for hours worked up to[] forty (40) in a workweek." (Document No. 38, pp. 20-21). Plaintiff concludes that "Plaintiffs have not limited their claims under the North Carolina Wage and Hour Act to only unpaid wages for hours worked in excess of forty" and therefore, this Court should not dismiss Plaintiffs' claims for "straight time wages earned and accrued." (Document No. 38, p. 22)(citing Document No. 24, ¶¶ 2, 7, 136, 140, 141, 143).

Defendants' reply brief argues that Named Plaintiff Daniel's NCHWA claim should be dismissed even if he is not seeking a claim for overtime. (Document No. 39, pp. 15-22). Defendants contend that payment related to disputed meal periods is not addressed by

13

N.C.Gen.Stat. § 95-25.6. (Document No. 39, p. 15). According to Defendants, "[s]ince the core dispute between the parties here is whether the alleged time was ever actually compensable at all, it clearly falls on the side of the cases that have dismissed state law claims in favor of FLSA remedies." (Document No. 39, p. 19).

The undersigned observes that the crux of Defendants' argument is that Named Plaintiff's NCWHA claim fails because the relief he is seeking related to wages is covered by the FLSA, and therefore, cannot be sought under the NCWHA. Although Defendants argue that Plaintiff's NCWHA claim should be dismissed because it is covered by FLSA remedies, in a subsequent motion in this case Defendants seem to argue that Plaintiff *cannot* seek relief under the FLSA because he is exempted under the Motor Carrier Act ("MCA"). See (Document No. 41). Defendants' later argument in favor of summary judgment on the FLSA claim seems to contradict their position on the motion to dismiss that Plaintiff's claims are "otherwise recoverable under the FLSA." Compare (Document No. 33-1, p. 17 and Document No. 41, pp. 12-13).

It also appears that questions around the applicability of the NCWHA, FLSA, and/or MCA may require further development of the factual record. To date, there has been no Pretrial Order and to the undersigned's knowledge no discovery has been conducted.

The undersigned finds that this issue presents a close call and that the Court should decline to dismiss the NCWHA claim at this early stage of the litigation. Under all the circumstances of this case, the undersigned is persuaded that dismissal of the NCWHA claim would be premature. The undersigned, therefore, will respectfully recommend that Defendants' motion to dismiss Plaintiff's Count II NCWHA claim be denied without prejudice.

> **2. North Carolina Retaliatory Discrimination Act and Wrongful Discharge in Violation of North Carolina Public Policy**

14

Next, Defendants argue that Named Plaintiff fails to plead facts sufficient to support a state law retaliation claim under the North Carolina Retaliatory Employment Discrimination Act ("REDA") or a wrongful termination in violation of public policy. (Document No. 33-1, pp. 20-24). Defendants note that Named Plaintiff alleges that all Plaintiffs were terminated from "their employment in retaliation for raising concerns about workplace safety, which (they claim) is a protected activity under the North Carolina Occupational Safety and Hazard Act ("OSHANC")." (Document No. 33-1, p. 20) (citing Document No. 24, ¶¶ 145-155).

Defendants summarize the requirements of a REDA claim as follows:

> REDA prohibits employers from retaliating against employees who, "'in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . . Article 16 of this Chapter[,]' the Occupational Safety and Health Act of North Carolina . . . ." *Pierce v. Atl. Grp., Inc.*, 724 S.E.2d 568, 573 (N.C. Ct. App. 2012) (quoting N.C. Gen. Stat. §§ 95-126 (2011) et. seq.). To state a claim under REDA, a plaintiff must plead "(1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." *Fatta v. M & M Properties Mgmt., Inc.*, 727 S.E.2d 595, 598-99 (N.C. Ct. App. 2012), *review denied*, 735 S.E.2d 182 (N.C. 2012) and review denied, 743 S.E.2d 182 (N.C. 2013).

(Document No. 33-1, p. 20).

Defendants contend that Count III should be dismissed because Plaintiff(s) cannot allege "facts sufficient to satisfy the first prong of the test: engage in a legally cognizable protected activity." (Document No. 33-1, p. 21). Defendants argue that Plaintiff's complaints "about COVID-19 risks, insufficient PPE, and insufficient safety protocols . . . do not rise to the level of conduct necessary to be considered protected activity." Id. According to Defendants, "[b]oth

15

federal and state courts in North Carolina have recognized that complaints to management are not enough to be protected activity under REDA." Id. (citations omitted).

Defendants further contend that Named Plaintiff's Count IV common law claim for wrongful discharge in violation of public policy fails to plead sufficient facts showing that a specific public policy was violated or that Plaintiff(s) were encouraged to violate a law that could result in public harm. (Document No. 33-1, p. 22).

Defendant notes that to state a claim a plaintiff must allege:

> (1) that her employer actually discharged her; and (2) that the discharge violated a specific North Carolina public policy or that the defendant encouraged the plaintiff to violate a law that might result in potential harm to the public. *Gillis v. Montgomery Cnty. Sheriff's Dep't*, 663 S.E.2d 447, 450 (N.C. Ct. App. 2008); *see also Pierce*, 724 S.E.2d at 576 ("[W]rongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employers request, . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy[.]" (Internal quotations omitted.)). "To prevail on a claim for unlawful termination in violation of public policy a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee." *McDonnell v. Tradewind Airlines, Inc.*, 670 S.E.2d 302, 305 (N.C. Ct. App. 2009) (quotation omitted), *cert. denied*, 675 S.E.2d 657 (N.C. 2009).

(Document No. 33-1, p. 23).

Defendants acknowledge that it is alleged that they violated OSHANC, and that North Carolina courts recognize "claims for wrongful retaliation for exercising OSHANC-protected rights under both REDA and a common law claim," but argue that the claim still fails "because as explained above, Plaintiffs did not engage in protected activity under OSHANC and Defendants did not violate that statute or REDA by ending their employment." (Document No. 33-1, p. 23).

In response, Named Plaintiff Daniel contends that Defendants' authority is outdated. (Document No. 38, p. 23). Daniel argues that "[o]nce an employee has informed his employer of

16

the intent to file a claim, the employee has engaged in protected activity." Id. (citing Whiting v. Wolfson Casing Corp., 173 N.C.App. 218 (2005));  see also Eschert v. City of Charlotte, 3:16-CV-295-FDW-DCK, 2017 WL 3633275, at *4 (W.D.N.C. August 23, 2017) (noting an employee may engage in protected activity when they threaten to file a claim *or initiate any inquiry or investigation*).  In addition, Named Plaintiff asserts that a recent Fourth Circuit decision found that "*an employee's internal complaints may be protected under REDA*, especially where (1) the employee's complaint relates or leads to an investigation and (2) whether the complaint was made to someone other than the employee's supervisor." (Document No. 38, p. 23) (citing Driskell v. Summit Contracting Grp., Inc., 828 F.App'x 858, 867 (4th Cir. 2020)).

Named Plaintiff contends that Plaintiffs engaged in protected activity here because they: complained of an unsafe work environment, in violation of NC OSHA;  made multiple requests for a change in policy regarding Defendants' allegedly dangerous practices;  and their complaints resulted in discussions with and among corporate-level management – including the facility manager's superior, multiple transportation supervisors, the district manager, a human resources manager, a senior vice president and a regional vice president.  (Document No. 38, pp. 23-24) (citations omitted).  Plaintiff concludes that the REDA and wrongful discharge claims fall within the protected activity envisioned by the Act and as outlined in Driskell.  (Document No. 38, pp. 22, 24).

In reply, Defendants argue that Plaintiff's REDA and wrongful discharge claims do not meet the standard discussed in Driskell.  (Document No. 39, pp. 23-25).  Defendants contend that the alleged protected activity here does not rise to the level of the activity found protected in Driskell.  (Document No. 39, p. 23).  Defendants suggest that this case is different because "there is no allegation that these complaints related to an ongoing investigation or that it actually led to

17

an investigation or that they were made to a high-level manager such as the company president or CEO." (Document No. 39, pp. 23-24). Defendants seem to conclude, at least in part, that Named Plaintiff's claims should fail because he *assumed* that Plaintiffs' complaints went to multiple managers and supervisors at various levels. (Document No. 39, p. 24).

The undersigned notes that contrary to Defendants' argument that Plaintiff's claim is based on *assumptions*, the Amended Complaint specifically alleges that "Named Plaintiff and the aforementioned Opt-in Plaintiffs, voiced their concerns to the transportation supervisors . . . [then] contacted Defendants' human resources and corporate offices, to complain of the treatment by the facility manager, the lack of information and communication, and the complete lack of safety protocols in place and any protective gear." (Document No. 24, pp. 12-13). "Defendants' Facility Manager informed Named and Opt-in Plaintiffs that he had notified his manager, the senior vice president, the regional vice president, and their business human resources partners of Plaintiffs' complaints and inquiries." (Document No. 24, p. 14). Named and Opt-In Plaintiffs who complained about workplace safety were terminated the next day. (Document No. 24, pp. 15-16).

The undersigned finds that Plaintiff has alleged sufficient facts to support plausible claims for violation of REDA and wrongful discharge at this stage of the litigation. See (Document No. 24, pp. 26-28). As such, undersigned will recommend that the motion to dismiss be denied without prejudice as to Plaintiff's Count III REDA claim and Count IV wrongful discharge claim.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants Stericycle Inc And Shred-It USA LLC's Motion To Stay Opt-In Plaintiffs' Claims Pending Arbitration And Partially Dismiss Named Plaintiff's Amended Complaint For Failure To State A Claim" (Document No. 33) be **GRANTED in part and DENIED in part**. Specifically,

the undersigned recommends that this action be **STAYED** as to the Opt-In Plaintiffs; and that Defendants' request for dismissal of Named Plaintiff Phillip Daniel's Counts II, II, and IV claims be **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the Opt-In Plaintiffs be directed to file a Status Report, jointly if possible, on **February 1, 2022**, **and every ninety (90) days thereafter**, until Arbitration is concluded, or this lawsuit dismissed.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: November 24, 2021

David C. Keesler
United States Magistrate Judge