UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00655-RJC-DCK

| | |
|---|---|
| PHILLIP DANIEL, on behalf of himself and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STERICYCLE, INC. and SHRED-IT USA, LLC, )<br>)<br>)<br>Defendants. ) | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Unopposed Motion for Final Approval of the Proposed Class and Collective Action Settlement, (Doc. No. 115), Plaintiff's Unopposed Motion for Attorneys' Fees (Doc. No. 106), and the Unopposed Motion for Preliminary Approval of Service Awards, (Doc. No. 109).

Named Plaintiff asserted claims against Defendants Stericycle Inc. and Shred-It USA, LLC (collectively "Defendants") on behalf of himself and all others similarly situated ("Plaintiffs") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the North Carolina Wage and Hour Act ("NCWHA"). Collectively, Plaintiff asserts Defendants maintained a policy and practice of failing to compensate him, the FLSA Opt-In Plaintiffs, and the Rule 23 Settlement Class Members for all hours worked, including working through unpaid lunch breaks. Plaintiff has asserted that Defendants' North Carolina employees were subject to these systemic policies and practices that violate both the FLSA and the NCWHA. Defendants have denied,

1

and continue to deny, the allegations and any liability to Named Plaintiff, the FLSA Opt-In Plaintiffs, or the members of the Rule 23 State Law Settlement Class and has raised various defenses to the claims.

This action has already involved extensive litigation over a variety of motions, and although formal discovery had not yet begun, Defendants provided Plaintiff with company records, including time and payroll data for himself, the FLSA Opt-In Plaintiffs, and the Rule 23 Settlement Class Members, and company pay policies, as part of the Parties' mediation agreement. (Doc. No. 116 at 4). This extensive confidential, pre-mediation document production allowed Class Counsel to evaluate the claims and to calculate estimated damages using their methodology before mediation.

On May 31, 2023, the Parties participated in a virtual ZOOM mediation with Judge William Connelly (Ret.), a well-respected mediator with experience mediating class- and collective- action wage and hour claims, in an effort to resolve Plaintiff's FLSA collective and NCWHA class claims. The Parties did not reach an agreement on May 31, 2023, but continued to negotiate after the formal mediation session. The Parties filed a Joint Notice of Settlement on June 9, 2023, advising the Court that the Parties had reached an agreement in principle to settle the action and that they anticipated filing the preliminary approval papers no later than July 10, 2023. (Doc. No. 94). The Parties subsequently moved the Court for an extension of time for Plaintiff to file his unopposed motion for preliminary approval by August 31, 2023, (Doc. No. 102), which the Court promptly granted (Doc. No. 103).

On August 31, 2023, Plaintiff filed unopposed motions for preliminary approval of the proposed settlement, as well as preliminary approval of Plaintiff's proposed attorneys' fees, costs, and expenses[1] and a service award. (*See* Doc. Nos. 106–109). As noted above, on June 10, 2024, the Court granted preliminary approval of the proposed settlement, directing notice be mailed to Rule 23 Settlement Class Members, setting the date for the final fairness hearing as well as approving Plaintiff's proposed attorneys' fees, costs, and expenses and the requested service award. (*See* Doc. Nos. 112–114).

On June 10, 2024, the Court granted preliminary approval of the proposed settlement, directing notice to be mailed to Rule 23 Settlement Class Members consistent with the procedures outlined in the Parties' Settlement Agreement, appointing CPT Group ("CPT") as the Settlement Administrator and ordering CPT to perform the administrative duties outlined in its June 10, 2024 Order and the Parties' Settlement Agreement. (Doc. No. 112). In addition, the Court also granted Plaintiff's unopposed motion for proposed attorneys' fees, costs, and expenses and the requested service award. (Doc. Nos. 113–114).

In accordance with the terms of the proposed settlement, the Court set the deadline for Rule 23 Settlement Class Members to opt out of the settlement or submit an objection within forty-five (45) days of the mailing of the Court-approved settlement Notice. The Court scheduled a fairness hearing for September 23, 2024,

---

[1] Plaintiff has also filed a supplemental declaration in support of his motion for attorneys' fees and costs. (Doc. No. 117).

at 10:00 A.M., to determine whether the proposed Settlement Agreement should receive final approval.

Finally, CPT Group ("CPT") was appointed to serve as the neutral, third-party Settlement Administrator in this case, (Doc. No. 112), and consistent with the Parties' Settlement Agreement, the Court ordered and authorized CPT to perform the administrative duties as outlined in its June 10, 2024 Order. (Doc. No. 112 at 9–10.

Having considered the Plaintiff's Unopposed Motion for Final Approval, Unopposed Motion for Attorneys' Fees and Expenses, Unopposed Motion for Service Awards, and the supporting declarations, the oral argument presented at the fairness hearing, and the complete record in this action, for the reasons set forth therein and stated on the record at the September 23, 2024 fairness hearing, and for good cause shown:

**IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. Plaintiff's Final Approval Motion (Doc. No. 115) is **GRANTED** and finally approves the proposed settlement as set forth in the Parties' Joint Stipulation of Class and Collective Action Settlement and Release of Claims ("Settlement Agreement") (Doc. No. 105-1).

**Final Settlement Approval**

2. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *see also Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan 8, 2020); *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly

in the action context."); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, *4 Newberg on Class Actions* § 13.44, n1 (5th ed. Dec. 2019) (collecting cases).

3. The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-0400-BR, 2009 WL 2208131, at 23 (E.D.N.C. July 22, 2009) (citing e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

## Procedural Fairness

4. The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Cirillo v. Citrix Systems, Inc.,* No. 5:21-cv-00088-BO, ECF 129, at *4 (E.D.N.C. January 5, 2024) ("The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.") (citations omitted); *Myers v. Loomis Armored US, LLC*, No. 318CV00532FDWDSC, 2020 WL 1815902, at *2 (W.D.N.C. Apr. 9, 2020); *West v. Const'l Inc.*, No., 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("The

5

[s]ettlement was not hastily arrived at. Indeed, the [s]ettlement followed lengthy discussions and considerable dialogue between the [p]arties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 294047, at *4 (D. Md. June 13, 2013) (unpublished); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (unpublished) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation. . . [and] enlisted the services of an experienced employment [law] mediator).

5. Class Counsel conducted thorough investigations and evaluated the claims and defenses and reached a settlement after mediation and continued arm's-length negotiations between the Parties. (*See generally* Doc. Nos. 105, 107, 110, 115).

6. Pursuant to the Parties' Confidential Mediation Agreement effective February 24, 2023, Defendants provided Plaintiff with time and payroll data, and other confidential materials for himself, the FLSA Opt-In Plaintiffs, and Rule 23 state law class members so that Plaintiff could conduct a full damages analysis. On May 31, 2023, the Parties participated in a virtual ZOOM mediation with Hon. Judge William Connelly (Ret.) in an effort to resolve Plaintiff's FLSA collective and NCWHA class action claims. On June 9, 2023, the Parties filed a Joint Notice of Settlement,

advising the Court that the Parties had reached an agreement in principle. (Doc. No. 94). These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *See West*, WL 1146642, at *5 ("[T]here is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the Parties or their attorneys at the terms of this Settlement.").

## Fair, Adequate, and Reasonable

7. The settlement is substantively fair and meets all factors that illuminate this analysis. *See Sharm Farms*, 917 F.3d at 299; *Berry*, 807 F3d at 614; *In re Jiffy Lube Sec., Litig.*, 927 F.2d at 158-59; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 452 (2d. Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

8. The factors this Court considers are: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. *See Berry*, 807 F3d at 614; *Scardelletti v. Debarr,* 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam) (unpublished); *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158–59.

9. Litigation through trial would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor

7

of final approval.

10. The reaction of the Rule 23 Settlement Class Members to the settlement was positive. Settlement Notices in the form approved by this Court were sent to three-hundred and fourteen (314) Rule 23 Settlement Class Members and included extensive information regarding the claims they would be releasing as part of the proposed settlement, their right to object or exclude themselves from the proposed settlement, as well as an explanation of how to do so. The Notice also included information regarding how to contact the Settlement Administrator or Class Counsel should they have questions regarding their rights or estimated Individual Settlement Amount. (*See* Doc. Nos. 115, Ex. 1, 116-1). Of the 314 Rule 23 Settlement Class Members, *zero* (0) requested exclusion, and none objected to the settlement. (Ex. A, CPT Declaration ¶ 12). This favorable response demonstrates the Rule 23 Settlement Class Members approved of the settlement, which further supports final approval. *See, e.g., West*, 2018 WL 1146642, R *6 ("No objections have been filed in this case. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (internal quotations omitted)); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) (unpublished); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

11. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *West,* 2018 WL 1146642, at *4; *see Riddle*

8

*v. City of Anderson*, No. 8:12-cv-03480-TMC, 2015 WL 12830369, at *6 (D.SC. Jan. 26, 2015) (unpublished). They did. Pursuant to the Parties' Mediation Agreement, Defendants provided Plaintiff with time and payroll data as described above. This extensive confidential pre-mediation document production allowed for an evaluation of Plaintiff's class and collective action claims and the calculation of estimated damages by Class Counsel. Moreover, Plaintiff had completed full briefing on a motion for conditional certification, which provided Plaintiff and his counsel with a wealth of information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor weighs in favor of final approval.

12. "In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *Id.*, 2015 WL 12850547, at *12 (D.S.C. July 22, 2015) (unpublished) (quotation omitted). Plaintiff here would have to overcome probable attempts by the Defendants to decertify the conditionally certified FLSA collective and to oppose the certification of any Rule 23 class. As other cases predicated on similar theories of liability suggest, this threat is real in this action. Moreover, Plaintiff would still have to overcome Defendants' opposition to the allegations of an automatic lunch break deduction and Class Counsel's calculation of alleged unpaid overtime, as well as the claims on the merits. Thus, the second and third factors weigh in favor of final approval.

13. There is no evidence whether Defendants could withstand a greater judgment. However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Thus, given that all of the factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

14. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (quotation omitted). This Court considers (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *See Sharp Farms*, 917 F.3d at 299; *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159; *West*, 2018 WL 1146642, at *4. The first two factors are the most important. *See Sharp Farms*, 917 F.3d at 299. As discussed, the proposed settlement meets these factors.

## APPROVAL OF THE FLSA AND RULE 23 SETTLEMENT

15. For settlement purposes only, the Rule 23 Settlement Class and FLSA Collective (consisting of FLSA Opt-In Plaintiffs) are finally certified pursuant to Fed.

R. Civ. P. 23 and 29 U.S.C. § 216(b), respectively.

16. The Court hereby approves the settlement with respect to the FLSA Opt-In Plaintiffs.

17. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F2d 1350, 1353 n.8 (11th Cir. 1982); *see also McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 2, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *15.

18. Here, the settlement was the result of a formal mediation involving arm's-length settlement negotiations. (*See* Doc. Nos. 105, 115). During the entire process, Plaintiff and Defendants were represented by counsel experienced in wage and hour law and class and collective action litigation. Accordingly, the Settlement Agreement resolves an actual dispute under the circumstances supporting a finding that is fair and reasonable.

19. The Court hereby approves the settlement with respect to the Rule 23 Settlement Class.

20. Courts generally approve Rule 23 class action settlements when they are

fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). After due consideration and inquiry into the circumstances surrounding the proposed settlement of Plaintiff's FLSA collective action claims and Rule 23 class claims under the NCWHA against Defendants, and review of the Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval as it reflects a reasonable compromise of a bona fide dispute. The Court finds and concludes that the proposed settlement and its terms, including the Parties' Settlement Agreement, is fair, reasonable, and adequate, and in the best interest of the Parties. The Court further finds the settlement to have been reached in good faith. The Court further finds that the proposed settlement and its terms, including the Parties' Settlement Agreement, is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23 (e). The Court finds that the approved class representative, Phillip Daniel, and Class Counsel have adequately represented the Rule 23 Settlement Class and that the settlement proposal was negotiated at arm's length. The Court further finds that the relief provided for the Rule 23 Settlement Class is adequate, considering: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) the Parties' Settlement Agreement. The Court also finds that the settlement proposal treats Rule 23 Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D).

## DISSEMINATION OF NOTICE

21. Pursuant to the Court's order preliminarily approving the proposed settlement, (Doc. No. 112), dated June 10, 2024, all Rule 23 Settlement Class Members were sent court-approved Notices by first-class mail at his or her last known address as well as, where possible, by email and text message.

22. The Notice fairly and adequately advised Rule 23 Settlement Class Members of the terms of the proposed settlement, as well as the right of Rule 23 Settlement Class Members to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on September 23, 2024. Rule 23 Settlement Class Members were provided with the best notice practicable under the circumstances.

23. The Notices and their distribution met with all constitutional requirements, including due process.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARD TO NAMED PLAINTIFF PHILLIP DANIEL

24. By order dated June 10, 2024, the Court granted Plaintiff's Unopposed Motion for Attorneys' Fees and Reimbursement of Costs and Expenses in the amount of $241,666.67, which is one-third of the Maximum Gross Settlement Amount, in addition to, reimbursement of litigation costs and expenses in an amount not to exceed $20,000.00. (Doc. No. 113).

25. Class Counsel's request for one-third of the Maximum Gross Settlement Amount is reasonable. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (articulating factors to consider in analyzing whether a request for attorneys' fees in class action litigation is reasonable); *In re Outer Banks Power Outage Litig.*,

No. 4:17-CV-141-D, 2018 U.S. Dist. LEXIS 161714, at *6–10 (E.D.N.C. Sept. 21, 2018) (unpublished) (collecting cases); *Hall*, 2016 WL 5416582, at *7; *Ferris v. Sprint Comme'nc Co.*, No. 5:11-cv-667-H, 2012 WL 12915716, at *3-4 (E.D.N.C. Dec. 13, 2012); *Phillips v. Triad Guar., Inc.*, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016) (unpublished); *In re The Mills Corp., Secs. Litig.*, 265 F.R.D. 246, 261, 264 (E.D. Va. 2009) (same); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *see also Hess v. Sprint Communs. Co. L.P.*, 2012 U.S. Dist. LEXIS 168963, at *6 (N.D.W. Va. Nov. 26, 2012) (unpublished).

26. In applying the common fund method, the Supreme Court and Circuit Courts across the country have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the defendant. *See Boeing Co. v. Van Gernert, et al.,* 444 U.S. 472, 481–82 (1980); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007); *Waters v. International Precious Metals Corp.,* 190 F.3d. 1291, 1296-97 (11th Cir. 1999).

27. No Rule 23 Settlement Class Member objected to Class Counsel's request for one-third of the Maximum Gross Settlement Amount, which also provides support for Class Counsel's fee request. *See, e.g.*, *In re Outer Banks Power Outage Litig.*, 2018 U.S. Dist. LEXIS 161714, at *9.

28. The hours Class Counsel worked at the rates set forth in the GAH

14

Supplemental Declaration yields a total lodestar inclusive of expenses calculated at $373,785.50 (or a combined total of 724.3 hours for a lodestar of $373,785.50 and a total of $20,000 in costs). (Doc. No. 117 at ¶¶ 9, 12). While the current lodestar has already exceeded one third of the Maximum Gross Settlement Fund, Class Counsel's lodestar and expenses will increase as the settlement progresses. In light of the fact that Class Counsel will likely perform additional work after the fairness hearing, Class Counsel's request is rendered even more reasonable and will approximate the lodestar amount. *See ECOS*, 671 F. Supp. at 400–01; *In re Montgomery Cty.*, 83 F.R.D. at 323; *Reyes v. Altamarea Grp., LLC*, No. 10-cv-6451 RLE, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011).

29. The attorneys' fees and the amount in reimbursement of costs and expenses shall be paid from the Maximum Gross Settlement Fund in accordance with the Settlement Agreement.

30. By order dated June 10, 2024, the court preliminarily granted Plaintiff's Unopposed Motion for Approval of Service Award to Named Plaintiff Phillip Daniel in the amount of $15,000 (Doc. No. 114), in recognition of his support and significant efforts in furtherance of the litigation and settlement, as well as the ongoing risks he undertook.

31. Consistent with the terms of the Settlement Agreement, the "Final Effective Date" of the settlement shall be "the first date when" the following remaining events have occurred: (1) the Court has entered a Final Approval Order dismissing the Action with prejudice; and (b) the latest of the following events: (i) the

expiration of the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; (ii) the dismissal of any appeal, writ, or other appellate proceeding opposing the Settlement with no right to pursue further remedies or relief; and (iii) the issuance of a final appellate order upholding the Court's final order with no right to pursue further remedies or relief. This Order shall constitute a Final Judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure and as defined in the Settlement Agreement.

## SETTLEMENT ADMINISTRATOR

32. The Court confirms its prior Order appointing CPT as the Settlement Administrator in this case, (Doc. No. 112), and the duties CPT was previously ordered to perform therein in conjunction with any order granting final approval to the Settlement in this action.

33. Consistent with the Court's prior Order appointing CPT as Settlement Administrator, CPT shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts from the Qualified Settlement Fund it established in connection with this Settlement.

34. Within fifteen (15) days after the Final Effective Date, the Settlement Administrator shall establish and maintain a qualifying, designated settlement fund pursuant to Section 468B of the Internal Revenue Code – a Qualified Settlement Fund.

35. Within thirty (30) calendar days after the Final Effective Date of the Settlement Agreement, Defendants shall deposit into the Qualified Settlement Fund the Maximum Gross Settlement Amount of $725,000 provided that CPT has provided Defendants with instructions that include all details necessary for Defendants to make that deposit in a timely manner.

36. Within five (5) business days after Defendants remit the Maximum Gross Settlement Amount to the Settlement Administrator to fund the Qualified Settlement Fund, CPT shall issue (1) the Court-approved payment of Class Counsel Fees, Costs, and Expenses from the Maximum Gross Settlement Amount in the amount of $241,666.67 for Attorneys' Fees and $20,000 for costs and expenses; and (2) the Court-approved Service Payment to Named Plaintiff Phillip Daniel from the Maximum Gross Settlement Amount in the amount of $15,000; in recognition of his support in prosecuting this case.

37. Twenty-One (21) calendar days after the Maximum Gross Settlement Amount is deposited into the Qualified Settlement Fund by Defendants, or as soon thereafter as practicable, CPT shall issue payment of the Individual Settlement Payments (as defined in the Settlement Agreement) to the Authorized Claimants (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement, along with a letter approved by Class Counsel and Defense Counsel explaining that the Settlement has received final approval and the claims released by the recipient, along with a copy of the Final Approval Order.

# DISMISSAL WITH PREJUDICE AND RELEASE

38. This litigation and the Released Claims (as defined in the Settlement Agreement) are hereby **DISMISSED ON THE MERITS AND WITH PREJUDICE**, and, as set forth below, the Named Plaintiff, FLSA Opt-In Plaintiffs and all Rule 23 Settlement Class Members who did not timely exclude themselves from the settlement shall be permanently enjoined from pursuing and/or seeking to prosecute and/or reopen against Defendants and the Defendant Releasees any Released Claims (as defined in the Settlement Agreement). Specifically, as stated in the Settlement Agreement, this means:

• Upon the Final Effective Date, and as consideration for Defendants' payment of an Individual Settlement Payment and Service Payment to the Named Plaintiff, and the other good and valuable consideration described in the Settlement Agreement, the general release of the claims by Named Plaintiff with respect to the Defendant Releasees, as set forth in Section VI(1) of the Settlement Agreement, shall be effective. The general release of claims by the Named Plaintiff, and all provisions related thereto set forth in the Settlement Agreement are approved by the Court and fully incorporated in this Order.

• Upon the Final Effective Date, and as consideration for Defendants' payment of the Maximum Gross Settlement Amount, which shall provide funds for the Individual Settlement Payments (which includes those amounts attributable to the Authorized Claimants' North Carolina Wage Act claims, if any), and the other good and valuable consideration described in the Settlement Agreement, the release

of claims by each FLSA Opt-In Plaintiff and each Rule 23 Settlement Class Member (Authorized Claimants), as set forth in Section VI(2) of the Settlement Agreement, shall be effective. Additionally, as set forth in the Settlement Agreement, Rule 23 Settlement Class Members who cash the settlement check for their Individual Settlement Payment will also release claims under the FLSA. The Released Claims, and all provisions related thereto, set forth in the Settlement Agreement are approved by the Court and fully incorporated in this Order.

39. Pursuant to the Settlement Agreement, the Named Plaintiffs, FLSA Opt-In Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant, and are enjoined from prosecuting (either directly or indirectly, representatively or in any other capacity) against the Defendants and the Defendant Releasees any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any Released Claims (as defined in the Settlement Agreement), (Doc. No. 105-1 at §§ I(19), VIII(3)), with the exception that those Rule 23 Settlement Class Members who did not opt into the FLSA action and do not cash their Individual Settlement Payment check will preserve their FLSA claims.

40. The Court retains jurisdiction over this action, the claims alleged, the Parties in this Action, and the implementation, enforcement, and administration of the Settlement Agreement, including, among other things, the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

Signed: October 9, 2024

Robert J. Conrad, Jr.
United States District Judge